SCOTT C. CIFRESE, WSBA #25778
DANIEL W. SHORT, WSBA #7945
PAUL S. STEWART, WSBA #45469
PAINE HAMBLEN LLP
717 West Sprague Ave, Suite 1200
Spokane, WA 99201
Telephone: (509) 455-6046
scott.cifrese@painehamblen.com
dan.short@painehamblen.com
paul.stewart@painehamblen.com

MATTHEW J. FINK  (*Motion for Admission Pro Hac Vice To Be Filed*)
JENNA K. DIJOHN (*Motion for Admission Pro Hac Vice To Be Filed*)
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLC
10 South Wacker Drive, Suite 2100
Chicago, IL  60606
Telephone: (312) 585-1400
Facsimile: (312) 585-1401
mfink@nicolaidesllp.com
jdijohn@nicolaidesllp.com
*Counsel for Plaintiff Insurance Company for the State of Pennsylvania*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SPOKANE, a municipal corporation in and for the State of Washington,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

COMPLAINT FOR DECLARATORY JUDGMENT - 1

Plaintiff, Insurance Company of the State of Pennsylvania ("ICSOP" or "Plaintiff"), for its complaint for declaratory relief against the City of Spokane (the "City" or "Defendant"), states as follows

## NATURE OF ACTION

1. This is an insurance coverage action in which ICSOP seeks a declaration regarding its insurance obligations to the City under a series of special excess liability policies for public entities it issued to the City with respect to two lawsuits filed against the City: *West Terrace Golf, LLC v. City of Spokane*, Case No. 17-2-02120-7 pending in the Superior Court of the State of Washington, County of Spokane (the "West Terrace Lawsuit") and the proposed class action captioned *John E. Durgan et al. v. City of Spokane*, Case No. 17-2-02507-5, pending in the Superior Court of the State of Washington, County of Spokane (the "Durgan Lawsuit").[1]

2. The City requests a defense and indemnity from ICSOP in the Underlying Lawsuits.

3. ICSOP seeks a declaration that it has no duty to defend or indemnify the City in the Durgan Lawsuit, and that it has no obligation to indemnify the City in the West Terrace Lawsuit for the property damage relief, illegal and excessive rates, and over-charges the plaintiff seeks to recover from the City.

---

[1] Collectively, the West Terrace Lawsuit and the Durgan Lawsuit shall be referred to collectively as the "Underlying Lawsuits."

COMPLAINT FOR DECLARATORY JUDGMENT - 2

4.      Accordingly, a real, substantial, and justiciable controversy has arisen and now exists between ICSOP and the City, which controversy is subject to resolution by this Court under 28 U.S.C. §§ 2201 and 2202.

## PARTIES

5.      Plaintiff ICSOP is a corporation organized under the laws of the State of Illinois with its principal place of business in New York.

6.      Upon information and belief, the City is a municipal corporation located in Spokane County, Washington.

## JURISDICTION AND VENUE

7.      Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332(a)(1), because the Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      The City is subject to this Court's personal jurisdiction because it is incorporated in Washington and conducts business within this jurisdictional district.

9.      Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1332(a)(1), because the City conducts business within this judicial district and the claims at issue in the Underlying Lawsuits arise out of the City's alleged wrongful conduct in this judicial district.

## THE UNDERLYING LAWSUITS

*The West Terrace Lawsuit*

10.    West Terrace Golf, LLC d/b/a Fairways Golf Course ("West Terrace") initiated the West Terrace Golf Lawsuit against the City on or about June 5, 2017.

11.    On September 29, 2017, West Terrace Golf filed the Amended Complaint for Damages and Equitable Relief (the "Amended Complaint").  A true and correct copy of the Amended Complaint is attached as **Exhibit 1**. The Amended Complaint is the operative pleading in the West Terrace Lawsuit.

12.    The Amended Complaint asserts that West Terrace leases and operates the Fairways Golf Course (the "Golf Course"), an 18-hole daily fee golf course located in the West Plains area of Spokane County, Washington. *See* Ex. 1 at ¶ 2.

13.    West Terrace alleges that, in approximately 1986, the City agreed to provide municipal water services to customers outside of City limits, including the West Plains area, provided that private landowners agreed to (1) pay the substantial costs of the capital improvements required to connect West Plains to the City's water infrastructure, and (2) grant annexation covenants to the City. *See* Ex. 1 at ¶ 6.

14.    In reliance upon the representations made by the City to supply water services, in 1987, private landowners allegedly paid to construct the water infrastructure required to open and operate the Golf Course. *See* Ex. 1 at ¶ 7.

15.    After the private landowners paid for the installation of the necessary water infrastructure, the City allegedly arbitrarily and capriciously imposed an

COMPLAINT FOR DECLARATORY JUDGMENT - 4

unlawful water services surcharge, requiring all residents and businesses located outside the City's limits to pay in excess of up to 100 percent of the regular water services rates paid by residents and businesses within the City's limits. *See* Ex. 1 at ¶ 9.

16.    The Amended Complaint alleges that private residents and businesses located in the West Plains neighborhood, including West Terrace, have been and continue to be adversely affected by the City's discriminatory water services surcharge. *See* Ex. 1 at ¶ 10.

17.    It is alleged that by 2005, the City's arbitrary and capricious surcharges led to leasehold and management changes to the golf course due to its inability to be profitable, given the discriminatory water service rates being charged by the city. *See* Ex. 1 at ¶ 12.

18.    The Amended Complaint alleges that in 2006, the owner of the Golf Course was forced to cancel its lease and intended to permanently close the Golf Course, allegedly as a result of the City's arbitrary and capricious water services surcharge. *See* Ex. 1 at ¶ 13.

19.    In an effort to save the Golf Course from closure, a local real estate developer, Robert L. Heitman, Jr., who had purchased property adjacent to the Golf Course to develop into single-family homes, agreed to invest in the Golf Course after the City assured him that it would work with him to reduce both water consumption and the rates being charged for City water services. *See* Ex. 1 at ¶¶ 2. 11, 14-16.

COMPLAINT FOR DECLARATORY JUDGMENT - 5

20.    In January 2007, Mr. Heitman formed West Terrace to operate and manage the Golf Course pursuant to a lease and operating agreement between West Terrace and the owner of the real property where the Golf Course is located. *See* Ex. 1 at ¶ 17.

21.    The Amended Complaint alleges that, in June of 2007, as a result of ongoing rate complaints, and to encourage water conservation practices, the City adopted a water ordinance (the "Ordinance") for all municipal water system golf courses. The Ordinance established a new "separate user classification" comprised of golf courses applying certain conservation measures and provided for a "Supplemental Rate Credit" if the golf course customer "implements new irrigation system improvements that eliminate existing evaporation of potable City water from irrigation ponds." *See* Ex. 1 at ¶¶ 18-20, *quoting* SMC 13.04.2017.

22.    In reliance upon the Ordinance, West Terrace spent approximately $70,000 to increase irrigation efficiency at the Golf Course, allegedly becoming the most efficient golf course in the City in terms of water conservation as a result. *See* Ex. 1 at ¶¶ 21-22.

23.    The Amended Complaint alleges, however, that instead of reducing the Golf Course's water bill as promised, the City continued to increase its water services rates, to the point that West Terrace could no longer stay ahead of its water services charges, which exceed $85,000 per year. *See* Ex. 1 at ¶ 26.

COMPLAINT FOR DECLARATORY JUDGMENT - 6

24.    It is alleged that from 2007 to 2015, the City required West Terrace to pay an average price of $1.08 per water unit, more than 47.3 percent more than the City charged the four golf courses located within the City's limits, which allegedly paid only $0.74 per unit. *See* Ex. 1 at ¶ 27.

25.    In 2015, West Terrace contacted the City's Council President Ben Stuckart to discuss the water services surcharge, who allegedly intentionally ignored West Terrace's concerns. *See* Ex. 1 at ¶¶ 29-32.

26.    On October 18, 2016, West Terrace allegedly requested that the City's Director of Public Works approve a "Supplemental Rate Credit" pursuant to the Ordinance, requesting a timely response. *See* Ex. 1 at ¶¶ 37-38.

27.    The City allegedly failed and/or refused to provide a timely response, rejecting West Terrace's request on February 8, 2017, and demanding payment of West Terrace's outstanding water services charges of $40,739.54. *See* Ex. 1 at ¶ 44.

28.    The Amended Complaint also alleges that West Terrace raised its concerns about the water services charges with the City's mayor, who also ignored its requests. *See* Ex. 1 at ¶¶ 46-48.

29.    On May 30, 2017, despite West Terrace's alleged proposals to resolve the outstanding balance issue with a fixed payment schedule, the City physically disconnected West Terrace's water service connection to the City's water infrastructure, eliminating the Golf Course's access to City water services. *See* Ex.

1 at ¶¶ 49, 53. The City refused to restore West Terrace's access to metered City water services. *See* Ex. 1 at ¶ 54.

30.    The Amended Complaint alleges that, as a direct result of the City's unlawful misconduct, West Terrace has suffered property damage, lost revenue, and direct and consequential damages, and will continue to suffer such damages and irreparable harm. *See* Ex.1, generally.

31.    The West Terrace Lawsuit alleges the following causes of action against the City: (1) Declaratory Judgment – RCW 7.24 et seq.; (2) Temporary Restraining Order/Injunctive Relief; (3) Restitution; (4) Damages – RWC 80.04.440; (5) Negligent Misrepresentation; (6) Conversion/Misappropriation; (7) Promissory Estoppel/Implied Contract; (8) Equitable Estoppel; and (9) Tortious Interference with Business Enterprise. *See* Ex. 1, pp. 13-24, ICSOP00000013 - 24.

32.    The Amended Complaint seeks declaratory judgment, a preliminary and permanent injunction restoring water to West Terrace and prohibiting the City's water service charges at high rates; restitution of amounts paid by West Terrace in excess of the "city" water services rate, damages, pre-judgment and post-judgment interest, attorney fees, and costs. *See* Ex. 1, pp. 25-26, ICSOP00000025-26.

*The Durgan Lawsuit*

33.    On July 29, 2017, John E. Durgan, Tawndi L. Sargent, and Kristopher J. Kallem, individually and as class representatives for all others similarly situated (collectively, the "Durgan Plaintiffs"), initiated the Durgan Lawsuit against the City.

COMPLAINT FOR DECLARATORY JUDGMENT - 8

34.    On August 17, 2018, the Durgan Plaintiffs filed the Second Amended Complaint for Damages and Equitable Relief in the Durgan Lawsuit (the "Second Amended Complaint"), the operative pleading in the Durgan Lawsuit. A true and correct copy of the Second Amended Complaint is attached as **Exhibit 2**.

35.    The Second Amended Complaint alleges that the Durgan Plaintiffs each own and/or occupy premises located outside of the City's limits and within the City's Retail Water Service Area, receive municipal water utility services from the City, and were required to pay higher water services rates than the lower water services rates charged to customers located inside the City's limits. *See* Ex. 2 at ¶¶ 1-3.

36.    The Durgan Lawsuit seeks to certify the following proposed class (the "Proposed Class"):

> All current and former residents and businesses of Spokane County, Washington who (1) are or were at all times material hereto water utility customers of the Defendant City located outside the Cit's limits and within the City's Water Service Area, and (2) were charged by and required to pay to the City higher water services rates (i.e., "Outside City" water services rates") than water utility customers located within the City's limits were charged by and required to pay to the City.

*See* Ex. 2 at ¶ 8.

37.    The Second Amended Complaint alleges that since at least the early 1980s, the City actively encouraged various private landowners to develop residential communities in then-unincorporated areas of Spokane County located

COMPLAINT FOR DECLARATORY JUDGMENT - 9

outside the City limits boundaries and within the City's Water Service Area. *See* Ex. 2 at ¶ 22.

38.    As a result, the City entered into certain written and/or oral agreements and contracts with private landowners located outside the then-existing City limits, pursuant to which the City agreed to furnish municipal water services to certain residents and businesses located outside the City limits in exchange for those customers' agreements to 1) pay the substantial costs of the capital improvements required to connect to the City's then-existing water infrastructure, and 2) grant annexation covenants to the City. *See* Ex. 2 at ¶¶ 23-24.

39.    Pursuant to the Water Services Contracts, the City agreed to bill individual water services on a monthly and/or bimonthly basis for consumption as determined by reading each customer's individually numbered water meter. *See* Ex. 2 at ¶ 25.

40.    The Second Amended Complaint alleges that, pursuant to the Water Services Contracts and in reliance upon representations by the City, private landowners did in fact pay for and construct the water infrastructure required to develop various areas outside the City limits and within the City's Water Service Area. *See* Ex. 2 at ¶ 27.

41.    The Second Amended Complaint alleges that, once the private landowners paid for installation of the water infrastructure necessary for the City to provide water services to areas outside the City limits, the City arbitrarily and

COMPLAINT FOR DECLARATORY JUDGMENT - 10

capriciously imposed an unlawful and unreasonable water services surcharge. *See* Ex. 2 at ¶30.

42.     By 2002, the City allegedly arbitrarily required all Spokane County water customers to pay in excess of up to 100 percent of the regular water services rated paid by City water customers. *See* Ex. 2 at ¶ 31.  As a result, private residents in neighborhoods and businesses located throughout Spokane County near or adjacent to the City limits, including the Durgan Plaintiffs, have been and continue to be adversely affected by the City's alleged arbitrary and capricious discriminatory water services surcharge. *See* Ex. 2 at ¶32.

43.     The Second Amended Complaint alleged that the City has responded to complaints about this surcharge since 2002 by misrepresenting that its higher "Outside City" water services rates are based on (1) the purported higher "cost of service" to provide water to Spokane County Water Customers, (2) property taxes and other taxes paid only by City residents, and (3) the City's "long-term investment" in the City's water system. *See* Ex. 2 at ¶ 34.

44.     Due to the substantial complaints from customers outside City limits, on March 26, 2002, the City's Board of Commissioners committed to analyze the City's increased charged for sewer and water services to customers outside of the City's limits. *See* Ex. 2 at ¶ 36.

45.     The Second Amended Complaint alleges that the City knew at the time that the surcharges levied against customers outside of City limits were arbitrary,

COMPLAINT FOR DECLARATORY JUDGMENT - 11

capricious, unreasonable, unjust, and/or unlawful, yet the City intentionally and/or negligently failed to disclose these facts, despite public record requests to do so. *See* Ex. 2 at ¶ 38.

46.     The Amended Complaint also alleges that the City fraudulently and/or deceptively concealed the true facts regarding the discriminatory, excessive "Outside City" water services rates being charged, and continued its practice of discriminatorily overcharging Spokane County Water Customers excessive water service contract rates. *See* Ex. 2 at ¶ 39.

47.     From 2002 to the present, the City allegedly continued receiving complaints by and/or on behalf of Spokane County water customers about the City's discriminatory, excessive, arbitrary, and capriciously higher "Outside City" water services contract rates. *See* Ex. 2 at ¶ 40.

48.     In an allegedly calculated effort to conceal its unlawful misconduct, the City continued to intentionally and/or negligently misrepresent the true facts regarding its arbitrary and capriciously higher "Outside City" water services rates, for the purpose of fraudulently or inequitably preventing Spokane County Water Customers from commencing timely litigation. *See* Ex. 2 at ¶ 41.

49.     On or about April 9, 2014, the Spokane County Board of Commissioners submitted a public records request to the City requesting information regarding the City's reasoning for charging higher rates to customers outside City Limits. *See* Ex. 2 at ¶ 42. The City allegedly continued to know and understand that

COMPLAINT FOR DECLARATORY JUDGMENT - 12

these surcharges were arbitrary, capricious, unreasonable, unjust, and/or unlawful, but it intentionally and/or negligently failed or refused to provide the requested documents. *See* Ex. 2 at ¶ 43.

50.     In 2015, the City's Director of Public Works directed complaints about the higher water rates being charged to customers outside City limits to the City's Council and Council President Ben Stuckart. *See* Ex. 2 at ¶ 44.   However, the Council and President Stuckart allegedly ignored these concerns. *See* Ex. 2 at ¶ 46.

51.     The Second Amended Complaint alleges that, despite multiple requests to do so, the City has failed and/or refused to cease its discriminatory water services rate practices that specifically target Spokane County Water Customers such as the Durgan Plaintiffs and members of the Proposed Class. *See* Ex. 2 at ¶ 48.

52.     The Durgan Lawsuit alleges that, as a direct result of the city's unlawful over-charging misconduct, the Durgan Plaintiffs and the Proposed Class have suffered direct and consequential damages and irreparable harm. *See* Ex. 2 at ¶ 50.

53.     The Durgan Lawsuit alleges the following causes of action against the City: 1) Declaratory Judgment – RCW 7.24 *et seq.*; (2) Injunctive Relief; (3) Restitution; (4) Damages – RWC 80.04.440; (5) Breach of Contract/Implied Covenant of Good Faith and Fair Dealing; (6) Conversion/Misappropriation; (7) Accounts Receivable. *See* Ex. 2, pp. 15-26, ICSOP00000042 -53.

54.     The Second Amended Complaint seeks declaratory and injunctive relief requiring the City to adopt fair water utility rates, and reimbursement of excess

COMPLAINT FOR DECLARATORY JUDGMENT - 13

amounts paid in the past, totaling an estimated $30 million, damages to include refunds of amounts paid in excess of lawful water services rates since the date the unlawful practice commenced, together with interest and attorneys' fees and costs. *See* Ex. 2, pp. 26-27, ICSOP00000053-54.

## THE ICSOP POLICIES

55.    ICSOP issued to the City the following series of Special Excess Liability Policy for Public Entities:

> Policy No. 4302-3828, effective  September 1, 2002 to September 1, 2003 (the "2002-03 Policy");
> Policy No. 4303-4537, effective September 1, 2003 to September 1, 2004 (the "2003-04 Policy");
> Policy No. 4304-1744, effective September 1, 2004 to September 1, 2005 (the "2004-05 Policy");
> Policy No. 4305-2653, effective September 1, 2005 to September 1, 2006 (the 2005-06 Policy"); and
> Policy No. 8766788, effective September 1, 2006 to September 1, 2007 (the "2006-07 Policy").

Collectively, the 2002-03 Policy, the 2003-04 Policy, the 2004-05 Policy, the 2005-06 Policy, and the 2006-07 Policy shall be referred to as the "ICSOP Policies." The Policies are attached as Group Exhibit 3.

56.    The ICSOP Policies provide, in part:

**SECTION I.          WHAT WE SHALL PAY ON YOUR BEHALF**

    **A.    INSURING AGREEMENTS**

        **1.    BODILY INJURY AND PROPERTY DAMAGES LIABILITY**

COMPLAINT FOR DECLARATORY JUDGMENT - 14

We shall pay you, or on your behalf, the ultimate net loss, in excess of the retained limit, that the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract because of bodily injury or property damage arising out of an occurrence during the Policy Period.

2.      ERRORS AND OMISSIONS LIABILITY

We shall pay you, or on your behalf, the ultimate net loss, in excess of the retained limit, that the insured becomes legally obligated to pay to compensate others for loss arising out of your wrongful act that takes place during the Policy Period and arises solely in performing or failing to perform duties of the public entity.

* * *

B.      DEFENSE AND DEFENSE COSTS

1.      We shall have the right and duty to defend, investigate and settle any claim or suit seeking damages covered by the terms and conditions of this Policy when the applicable limits of insurance of the underlying insurance listed in the Schedule of Underlying Insurance, the limits of insurance of any other underlying insurance providing coverage to you, or your self-insured retention of the retained limit have been exhausted by payment to a third party of judgments, settlements, or defense costs, or by payment of covered first party automobile expenses.

* * *

4.      All expenses we incur in the defense of any suit or claim are included within the Limits of Insurance, except for salaries of our employees, our office expenses, and any expenses of any claims or suit by the servicing organization we have engaged.

5.      In all other instances except 1 above, we will not be obligated to assume charge of the investigation,

COMPLAINT FOR DECLARATORY JUDGMENT - 15

settlement or defense of any claim made, suit brought or proceeding instituted against you. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, suit or proceedings relative to any occurrence, wrongful act or employee benefit wrongful act, which in our opinion, may create liability for us under the terms and conditions of this Policy. If we exercise such right, we will do so at our own expense.

*See* Group Exhibit 3.

57.    The ICSOP Policies are subject to the following definitions:

**SECTION II.        DEFINITIONS**

* * *

C.    Bodily Injury means bodily harm, sickness, disability or disease. Bodily injury shall also mean mental injury, mental anguish, humiliation, shock or death if resulting directly from bodily injury, sickness, disability, or disease.  Bodily injury shall include care and loss of services resulting at any time resulting from the bodily injury of any person or persons.

* * *

N.    Insured contract means:

* * *

4.    An obligation, as required by ordinance;

* * *

W.    Occurrence means an accident, including continuous, repeated, or related exposure to substantially the same general harmful conditions, which results in bodily injury or property damage neither expected or intended from your standpoint.

COMPLAINT FOR DECLARATORY JUDGMENT - 16

* * *

AA.    Property damage means:

    1.    Physical injury to or destruction of tangible property, including all resulting loss of use of that property; or

    2.    Loss of use of tangible property that is not physically injured or destroyed.

BB.    Public entity refers to that municipality, governmental body, department, or unit, which is a Named Insured in the Declarations.

CC.    Retained limit refers to the amount stated in the Declarations. This amount may consist of a self-insured retention, underlying insurance, or a combination thereof. If there are policies of underlying insurance and they do not apply to the occurrence, wrongful act, and/or employee benefit wrongful act, you shall retain this amount as self-insurance as stated in the Declarations with respect to:

    1.    Bodily injury or property damage arising out of each such occurrence or series of continuous, repeated or related occurrences;

    2.    Each such wrongful act or series of continuous, repeated or related wrongful acts; or

    3.    Each such employee benefit wrongful act or series of continuous, repeated, or related employee benefit wrongful acts.

The retained limit, with respect to a self-insured retention, shall include defense costs.  The retained limit, however, shall not include salaries of your employees, your office expenses, or expenses of any claims servicing organization that you have engaged.

* * *

COMPLAINT FOR DECLARATORY JUDGMENT - 17

HH.   Ultimate net loss means the sum actually paid or payable due to a claim or suit for which you are liable either by a settlement to which we agreed or a final judgment, and shall include defense costs. Such sum will include proper adjustments for recoveries and salvage.

II.   Underlying insurance refers to the policies listed in the Schedule of Underlying Insurance and includes:

1.   Any-renewal or replacement of such policies;

2.   Any other insurance available to the you; and

3.   Any other valid and collectible risk financing mechanism provided under a joint powers authority.

\* \* \*

MM.   Wrongful act means:

Any actual or alleged error or misstatement, omission, negligent act, or breach of duty including misfeasance, malfeasance, and nonfeasance by you, including, but not limited to, those constituted by:

1.   Any violation of antitrust statutes;

2.   Any negligent ministerial act;

\* \* \*

5.   Discrimination on any basis, including, but not limited to; race, creed, religion, ethnic background, national origin, age, handicap, sex or sexual orientation; but not intentionally committed by you or at your direction.

Wrongful act also means any personal injury offense or advertising injury offense.

*See* Group Exhibit 3.

58.   The ICSOP Policies are each subject to a self-insured retention ("SIR").

COMPLAINT FOR DECLARATORY JUDGMENT - 18

59.     The 2002-03 Policy is subject to an SIR in the amount of $500,000. *See* Group Exhibit 3 at ICSOP00000057.

60.     The 2003-07 Policies are each subject to an SIR in the amount of $1,000,000. *See* Group Exhibit 3 at ICSOP000000101, 143, 184, 238.

61.     With respect to each of the ICSOP Policies' SIR, the ICSOP Policies provide:

**SECTION III.                LIMITS OF INSURANCE**

A.     The Limits of Insurance shown in the Declarations and the rules below state the most we will pay in excess of your retained limit regardless of the number of:

    1.     Insureds. However, in the event that there are multiple municipalities as Named Insureds, our Limits of Insurance shall apply separately to each municipality insured under this Policy;

    2.     Claims made or suits brought; or

    3.     Persons or organizations making claims or bringing suits.

B.     The retained limit shown in the Declarations applies:

    1.     Only to damages for occurrences, losses for wrongful acts, or losses for employee benefit wrongful acts covered under this Policy; and

    2.     Separately to each occurrence, wrongful act, or employee benefit wrongful act or series of continuous, repeated, or related occurrences, wrongful acts, or employee benefit wrongful acts; and

*  *  *

C.     Our duty to pay any sums that you become legally obligated to pay arises only after there has been a complete expenditure of your retained limit by means of payments for judgments,

COMPLAINT FOR DECLARATORY JUDGMENT - 19

settlements, or defense costs. Your retained limit shall not be exhausted by your office expenses, employees' salaries, or expenses of any claims servicing organization that you have engaged. We will then be liable only for that portion of damages in excess of your retained limit up to our Limits of Insurance.

D. If the limits of insurance of the underlying insurance are less than your retained limit, you shall bear the risk of the difference. If such limits, however, are greater than your retained limit, this Policy is in excess of the greater limits.

E. The Per Occurrence or Wrongful Act or Employee Benefit Wrongful Act Limit of Insurance is the most we will pay for the sum of all damages because of bodily injury or property damage arising out of a single occurrence or all losses arising out of a single wrongful act or all losses arising out of a single employee benefit wrongful act.

F. All occurrences arising out of continuous, repeated, or related occurrences shall be treated as one occurrence. All wrongful acts or employee benefit wrongful acts arising out of continuous, repeated, or related wrongful acts or employee benefit wrongful acts shall be treated as one wrongful act or one employee benefit wrongful act. The Limits of Insurance in effect when the first claim or suit is made and reported to us shall apply.

*See* Group Exhibit 3.

62. The ICSOP Policies are subject to the following exclusions:

**SECTION V.          EXCLUSIONS**

We will not defend or pay under this Policy for claims or suits against you:

A. For bodily injury or property damage, arising out of a wrongful act or employee benefit wrongful act whether causing or contributing to such bodily injury or property damage. However, if bodily injury or property damage arises out of an occurrence, coverage applies only to the occurrence and is subject to the terms and conditions of this Policy;

COMPLAINT FOR DECLARATORY JUDGMENT - 20

\* \* \*

K.      Arising out of the failure or inability to supply or provide an adequate supply of electricity, fuel, or water arising out of the interruption of the electrical power, fuel, or water supply.

\* \* \*

P.      Arising out of your wrongful act for gain, profit, or advantage to which you are not legally entitled. At our discretion, however, we will pay for defense costs for any claim or suit arising from an alleged willful commission of a crime by you or other dishonor, fraudulent or malicious act, for any claim or suit arising out of your wrongful act for gain, profit, or advantage to which you are not legally entitled until final adjudication, judgment or settlement to which we have agreed. If the judgment or final adjudication is adverse to you, you will reimburse us for all costs associated with the defense;

\* \* \*

AA.     For wrongful acts arising out of refund of taxes, fees, or assessments.

\* \* \*

EE.     For injunctions, equitable relief, or any other form of relief other than the payment of money damages; or

\* \* \*

*See* Group Exhibit 3.

63.     Accordingly, a real, substantial, and justiciable controversy has arisen and now exists between ICSOP and the City.

**<u>COUNT I</u>**
**DECLARATORY RELIEF**
(No Duty to Defend the Durgan Lawsuit – Bodily Injury and Property Damage Liability Coverage)

COMPLAINT FOR DECLARATORY JUDGMENT - 21

64.     ICSOP repeats and incorporates by reference Paragraphs 1-63 above as if fully set forth herein.

65.     The ICSOP Policies provide coverage, in relevant part, for the ultimate net loss, in excess of the retained limit, that the City becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract because of bodily injury or property damage arising out of an occurrence during the Policy Period (the "Bodily Injury and Property Damage Coverage").

66.     The Durgan Lawsuit does not allege "bodily injury" as defined by the ICSOP Policies because it does not allege that the Dugan Plaintiffs or the members of the Proposed Class sustained bodily harm, sickness, disability, or disease or mental injury, mental anguish, humiliation, shock or death.

67.     The Durgan Lawsuit does not allege "property damage" because it does not allege physical injury to or destruction of tangible property or loss of use of tangible property that is not physically injured or destroyed.

68.     Therefore, ICSOP is entitled to a declaration from this Court that it owes no defense obligation to the City, with respect to the Durgan Lawsuit, under the ICSOP Policies' Bodily Injury and Property Damage Coverage, because the allegations of the Durgan Lawsuit do not implicate coverage under the Bodily Injury and Property Damage Coverage insuring agreement.

69.     Additionally, the ICSOP Policies contain several exclusions that similarly bar coverage for the Durgan Lawsuit under the ICSOP Policies' Bodily Injury and Property Damage Coverage.

70.     ICSOP owes no defense obligation to the City with respect to the Durgan Lawsuit because Exclusion EE. of the ICSOP Policies bars coverage.

71.     Exclusion EE. of the Policies excludes coverage, in relevant part, for injunctions, equitable relief, or any other form of relief other than the payment of money damages.

72.     The Durgan Lawsuit seeks only those types of damages that are excluded by Exclusion EE.

73.     Therefore, ICSOP is entitled to a declaration from this Court that it owes no defense obligation to the City, with respect to the Durgan Lawsuit, under the ICSOP Policies' Bodily Injury and Property Damage Coverage, because Exclusion EE. Of the ICSOP Policies bars coverage.

74.     Furthermore, ICSOP owes no defense obligation to the City under the ICSOP Policies with respect to the Durgan Lawsuit because the known loss doctrine bars coverage for the Durgan Lawsuit.

75.     The known loss doctrine precludes coverage for a loss that has already occurred at the time the insured applied for the policy

76.     The Durgan Lawsuit alleges that customer complaints regarding the City's rate service surcharge began in 2002.

COMPLAINT FOR DECLARATORY JUDGMENT - 23

77.     The known loss doctrine precludes coverage for the Durgan Lawsuit because the City knew it was applying a discriminatory rate structure prior to the Policy Periods of the applicable ICSOP Policies.

78.     Therefore, ICSOP is entitled to a declaration from this Court that it owes no defense obligation to the City, with respect to the Durgan Lawsuit, under the ICSOP Policies' Bodily Injury and Property Damage Coverage, because the known loss doctrine bars coverage.

79.     Therefore, ICSOP is entitled to a declaration from this Court that it owes no defense obligation to the City with respect to the Durgan Lawsuit because the Durgan Lawsuit does not implicate the ICSOP Policies' Bodily Injury and Property Damage Coverage.

## <u>COUNT II</u>
### **DECLARATORY RELIEF**
(No Duty to Defend the Durgan Lawsuit – Errors and Omissions Liability Coverage)

80.     ICSOP repeats and incorporates by reference Paragraphs 1-79 above as if fully set forth herein.

81.     The ICSOP Policies provide coverage, in relevant part, for the ultimate net loss, in excess of the retained limit, that the insured becomes legally obligated to pay and to compensate others for loss arising out of the City's wrongful act that takes place during the Policy Period and arises solely in performing or failing to perform duties of the public entity (the "Errors and Omissions Coverage").

COMPLAINT FOR DECLARATORY JUDGMENT - 24

82.     The Durgan Lawsuit does not allege a "wrongful act" as defined by the ICSOP Policies because the Durgan Lawsuit does not allege that the higher rates charged to the Durgan Plaintiffs and the Proposed Class were an error, omission, or negligent act or a breach of duty.

83.     Therefore, ICSOP is entitled to a declaration from this Court that it owes no defense obligation to the City, with respect to the Durgan Lawsuit, under the ICSOP Policies' Errors and Omissions Coverage, because the allegations of the Durgan Lawsuit do not implicate coverage under the Errors and Omissions Coverage insuring agreement.

84.     Additionally, the ICSOP Policies contain several exclusions that bar coverage for the Durgan Lawsuit under to the ICSOP Policies' Errors and Omissions Coverage.

85.     ICSOP owes no defense obligation to the City under the ICSOP Policies with respect to the Durgan Lawsuit because Exclusion P. of the ICSOP Policies bars coverage.

86.     Exclusion P. precludes coverage for claims or lawsuits against the City arising out of the City's wrongful act for gain, profit, or advantage to which the City is not legally entitled.

87.     The Durgan Lawsuit seeks relief for reimbursement of allegedly excessive rates and over-charges charged by the City for water utility service.

88.     The allegedly excessive rates and over-charges implemented by the City in the Durgan Lawsuit constitute a gain, profit, or advantage to which the City would not be legally entitled.

89.     Therefore, ICSOP is entitled to a declaration from this Court that it owes no defense obligation to the City, with respect to the Durgan Lawsuit, under the ICSOP Policies' Errors and Omissions Coverage, because Exclusion P. of the ICSOP Policies bars coverage.

90.     Furthermore, ICSOP owes no defense obligation to the City under the ICSOP Policies because Exclusion AA. of the ICSOP Policies bars coverage for the Durgan Lawsuit.

91.     Exclusion AA precludes coverage for wrongful acts arising out of refund of taxes, fees, or assessments.

92.     The water service charges alleged in the Durgan Lawsuit are fees or assessments.

93.     Thus, the request for reimbursement in the Durgan Lawsuit for over-charges for water service is excluded under Exclusion AA.

94.     Therefore, ICSOP is entitled to a declaration from this Court that it owes no defense obligation to the City, with respect to the Durgan Lawsuit, under the ICSOP Policies' Errors and Omissions Coverage, because Exclusion AA. of the ICSOP Policies bars coverage.

COMPLAINT FOR DECLARATORY JUDGMENT - 26

95.    ICSOP is entitled to a declaration from this Court that it owes no defense obligation to the City with respect to the Durgan Lawsuit under the ICSOP Policies' Errors and Omissions Coverage because Exclusion EE. of the ICSOP Policies bars coverage.

96.    Exclusion EE. of the Policies excludes coverage, in relevant part, for injunctions, equitable relief, or any other form of relief other than the payment of money damages.

97.    The Durgan Lawsuit seeks only those types of damages that are excluded by Exclusion EE, and does not seek to recover money damages.

98.    Therefore, ICSOP is entitled to a declaration from this Court that it owes no defense obligation to the City, with respect to the Durgan Lawsuit, under the ICSOP Policies' Errors and Omissions Coverage, because Exclusion EE. Of the ICSOP Policies bars coverage.

99.    Furthermore, ICSOP owes no defense obligation to the City under the ICSOP Policies because the known loss doctrine bars coverage for the Durgan Lawsuit.

100.   The known loss doctrine precludes coverage for a loss that has already occurred at the time the insured applied for the policy.

101.   The Durgan Lawsuit alleges that customer complaints regarding the City's rate service surcharge began in 2002.

102.    The known loss doctrine precludes coverage for the Durgan Lawsuit because the City knew it was applying a discriminatory rate structure prior to the Policy Periods of the applicable ICSOP Policies.

103.    Therefore, ICSOP is entitled to a declaration from this Court that it owes no defense obligation to the City, with respect to the Durgan Lawsuit, under the ICSOP Policies' Errors and Omissions Coverage, because the known loss doctrine bars coverage.

104.    Therefore, ICSOP is entitled to a declaration from this Court that it owes no defense obligation to the City with respect to the Durgan Lawsuit because the Durgan Lawsuit does not implicate the ICSOP Policies' Errors and Omissions Coverage.

105.    Additionally, because ICSOP is entitled to a declaration that it owes no defense obligation to the City for the Durgan Lawsuit, ICSOP is also entitled to a declaration that any defense costs incurred by the City for its defense in the Durgan Lawsuit do not exhaust the applicable retained limit.

## COUNT III
## DECLARATORY RELIEF
(No Duty to Indemnify – The Durgan Lawsuit)

106.    ICSOP repeats and incorporates by reference Paragraphs 1-105 above as if fully set forth herein.

107.    The duty to defend is broader than the duty to indemnify. Thus, where there is no duty to defend, there is also no duty to indemnify.

COMPLAINT FOR DECLARATORY JUDGMENT - 28

108.   For the reasons described above, ICSOP owes no duty to defend the City under the ICSOP Policies with respect to the Durgan Lawsuit, and therefore and based on the same grounds, ICSOP owes no duty to indemnify the City relative to the Durgan Lawsuit.

**COUNT IV**
**DECLARATORY RELIEF**
(No Duty to Indemnify for Property Damage Relief – The West Terrace Lawsuit)

109.   ICSOP repeats and incorporates by reference Paragraphs 1-108 above as if fully set forth herein.

110.   While ICSOP has agreed to participate in the City's defense of the West Terrace Lawsuit subject to a full and complete reservation of rights, certain provisions and exclusions contained within the ICSOP Policies preclude indemnity coverage for certain categories of relief sought in the West Terrace Lawsuit.

111.   The ICSOP Policies' Bodily Injury and Property Damage Coverage provides coverage, in relevant part, for the ultimate net loss, in excess of the retained limit, that the City becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract because of bodily injury or property damage arising out of an occurrence during the Policy Period.

112.   The West Terrace Lawsuit does not allege "bodily injury" as defined by the ICSOP Policies because it does not allege that West Terrace sustained bodily

COMPLAINT FOR DECLARATORY JUDGMENT - 29

harm, sickness, disability, or disease or mental injury, mental anguish, humiliation, shock or death.

113.   The West Terrace Lawsuit does not allege "property damage" during the Policy Period because the West Terrace Lawsuits alleges that the water supply to the Golf Course was shut off on May 30, 2017, and the Golf Course allegedly suffered damages as a result.

114.   Because the "property damage" took place after the water was shut off in 2017, and the last ICSOP Policy expired on September 1, 2007, any alleged "property damage" took place after the expiration of the ICSOP Policies.

115.   The West Terrace Lawsuit does not allege "property damage" arising out of an "occurrence" because the Amended Complaint alleges that the City intentionally shut off the water to the Golf Course on May 30, 2017.

116.   Therefore, ICSOP is entitled to a declaration from this Court that it owes no indemnity obligation to the City, with respect to the West Terrace Lawsuit, under the ICSOP Policies' Bodily Injury and Property Damage Coverage, because the allegations of the West Terrace Lawsuit do not implicate coverage under the Bodily Injury and Property Damage Coverage insuring agreement.

117.   Furthermore, ICSOP owes no indemnity obligation to the City with respect to any property damage alleged in the West Terrace Lawsuit because Exclusion A. of the ICSOP Policies bars coverage.

118.  Exclusion A. precludes coverage for bodily injury or property damage arising out of a wrongful act or employee benefit wrongful act whether causing or contributing to such bodily injury or property damage. However, Exclusion A. provides that, if bodily injury or property damage arises out of an occurrence, coverage applies only to the occurrence and is subject to the terms and conditions of this Policy.

119.  The West Terrace Lawsuit alleges that West Terrace suffered damage to the Golf Course when the City cut off West Terrace's water supply.

120.  Exclusion A. bars coverage for the West Terrace Lawsuit because the alleged property damage did not arise out of an occurrence and instead arose out of the City's intentional termination of West Terrace's water supply.

121.  Therefore, ICSOP is entitled to a declaration from this Court that it owes no indemnity obligation to the City, with respect to the West Terrace Lawsuit, under the ICSOP Policies' Bodily Injury and Property Damage Coverage, because Exclusion A. precludes coverage for property damage arising out of a wrongful act.

122.  Additionally, ICSOP owes no indemnity obligation to the City with respect to any property damage alleged in the West Terrace Lawsuit because Exclusion K. of the ICSOP Policies bars coverage.

123.  Exclusion K. precludes coverage for damages arising out of the failure or inability to supply or provide an adequate supply of electricity, fuel, or water arising out of the interruption of the electrical power, fuel, or water supply.

124.    The West Terrace Lawsuit alleges that the City cut off West Terrace's water supply, causing West Terrace to sustain property damage.

125.    The West Terrace Lawsuit, therefore, seeks damages arising out of the City's failure to supply an adequate supply of water arising out of the interruption of the water supply.

126.    Therefore, ICSOP is entitled to a declaration from this Court that it owes no indemnity obligation to the City, with respect to the West Terrace Lawsuit, under the ICSOP Policies' Bodily Injury and Property Damage Coverage, because Exclusion K. precludes coverage for property damage arising out of the City's failure to supply an adequate supply of water arising out of the interruption of the water supply.

127.    Ultimately, therefore, ICSOP is entitled to a declaration from this Court that it owes no indemnity obligation to the City under the ICSOP Policies' Bodily Injury and Property Damage Coverage for relief sought with respect to any alleged property damage in the West Terrace Lawsuit.

<u>**COUNT V**</u>
**DECLARATORY RELIEF**
(No Duty to Indemnify for Excessive or Over-Charges – The West Terrace Lawsuit)

128.    ICSOP repeats and incorporates by reference Paragraphs 1-127 above as if fully set forth herein.

COMPLAINT FOR DECLARATORY JUDGMENT - 32

129.   While ICSOP has agreed to participate in the City's defense of the West Terrace Lawsuit subject to a full and complete reservation of rights, certain provisions and exclusions contained within the ICSOP Policies preclude indemnity coverage for certain categories of relief sought in the West Terrace Lawsuit.

130.   The West Terrace Lawsuit seeks to recover, in part, "all water rate compensation received from the Plaintiff in excess of the 'City' water services rates paid by businesses located within the City's limits" and "a refund of all amounts paid since 2006 in excess of lawful water services rates…." *See* Ex. 1 at p. 26, ICSOP00000026.

131.   Exclusion EE. of the Policies excludes coverage, in relevant part, for injunctions, equitable relief, or any other form of relief other than the payment of money damages.

132.   The relief requested by West Terrace with respect to the refund of all amounts paid in excess of lawful water services rates and all water rate compensation received in excess of those rates charged to customers located within the City's limits are a form of restitution and are therefore not money damages.

133.   Exclusion EE. precludes indemnity coverage for the restitution relief requested in the West Terrace Lawsuit because such relief is not money damages.

134.   Therefore, ICSOP is entitled to a declaration from this Court that Exclusion EE. precludes indemnity coverage for the relief requested in the West

COMPLAINT FOR DECLARATORY JUDGMENT - 33

Terrace Lawsuit with respect to a refund of the allegedly illegal and excessive over-charges for water services.

135.    Additionally, ICSOP owes no indemnity obligation to the City under the ICSOP Policies with respect to the West Terrace Lawsuit request for relief with respect to the refund of all amounts paid in excess of lawful water services rates and all water rate compensation received in excess of those rates charged to customers located within the City's limits, because Exclusion P. of the ICSOP Policies bars coverage.

136.    Exclusion P. precludes coverage for claims or lawsuits against the City arising out of the City's wrongful act for gain, profit, or advantage to which the City is not legally entitled.

137.    The allegedly excessive rates and over-charges implemented by the City in the West Terrace Lawsuit constitute a gain, profit, or advantage to which the City would not be legally entitled.

138.    Therefore, ICSOP is entitled to a declaration from this Court that Exclusion P. precludes indemnity coverage for the relief requested in the West Terrace Lawsuit with respect to a refund of the allegedly illegal and excessive over-charges for water services.

139.    Furthermore, ICSOP owes no indemnity obligation to the City under the ICSOP Policies for the relief requested with respect to the refund of all amounts paid in excess of lawful water services rates and all water rate compensation received

COMPLAINT FOR DECLARATORY JUDGMENT - 34

in excess of those rates charged to customers located within the City's limits, because Exclusion AA. of the ICSOP Policies bars coverage for the requested relief.

140.    Exclusion AA precludes coverage for wrongful acts arising out of refund of taxes, fees, or assessments.

141.    The water service charges alleged in the West Terrace Lawsuit are fees or assessments.

142.    Thus, the request for reimbursement in the West Terrace Lawsuit for over-charges for water service is excluded under Exclusion AA.

143.    Therefore, ICSOP is entitled to a declaration from this Court that Exclusion AA. precludes indemnity coverage for the relief requested in the West Terrace Lawsuit with respect to a refund of the allegedly illegal and excessive over-charges for water services.

144.    Ultimately, therefore, ICSOP is entitled to a declaration from this Court that it owes no indemnity obligation to the City under the ICSOP Policies, with respect to the relief requested in the West Terrace Lawsuit for refunds of the allegedly illegal and excessive over-charges for water services.

WHEREFORE, ICSOP respectfully prays that this Court enter an order:

      a.    Declaring that ICSOP has no duty to defend the City in the Durgan Lawsuit under the Bodily Injury and Property Damage Coverage of the ICSOP Policies;

COMPLAINT FOR DECLARATORY JUDGMENT - 35

b.    Declaring that ICSOP has no duty to defend the City in the Durgan Lawsuit under the Errors and Omissions Coverage of the ICSOP Policies;

c.    Declaring that, to the extent ICSOP has no duty to defend the City in the Durgan Lawsuit, the applicable retained limit of the ICSOP Policies is only exhausted by defense costs incurred by the City with respect to the West Terrace Lawsuit;

d.    Declaring that ICSOP has no duty to indemnify the City with respect to the Durgan Lawsuit under the ICSOP Policies;

e.    Declaring that ICSOP has no duty to indemnify the City under the ICSOP Policies' Bodily Injury and Property Damage Coverage with respect to the West Terrace Lawsuit;

f.    Declaring that ICSOP has no duty to indemnify the City under the ICSOP Policies with respect to the refund of illegal and excessive over-charges for water services rates sought by the plaintiff in the West Terrace Lawsuit;

g.    Granting ICSOP such other and further relief as this Court deems just and appropriate, including costs.

///

///

///

COMPLAINT FOR DECLARATORY JUDGMENT - 36

DATED this 15th day of March 2022.          Respectfully submitted,

s/ *Scott C. Cifrese*

SCOTT C. CIFRESE, WSBA #25778
DANIEL W. SHORT, WSBA #7945
PAUL S. STEWART, WSBA #45469
PAINE HAMBLEN LLP
717 West Sprague Ave, Suite 1200
Spokane, WA 99201
Telephone: (509) 455-6046
scott.cifrese@painehamblen.com
dan.short@painehamblen.com
paul.stewart@painehamblen.com

MATTHEW J. FINK*
JENNA K. DIJOHN*
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
10 South Wacker Drive, Suite 2100
Chicago, IL  60606
(312) 585-1400
(312) 585-1401 (fax)
mfink@nicolaidesllp.com
jdijohn@nicolaidesllp.com

*Counsel for Plaintiff Insurance Company for the State of Pennsylvania*

*\*Motion for Admission Pro Hac Vice To Be Filed*

COMPLAINT FOR DECLARATORY JUDGMENT - 37